1 LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
2 TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
3 NAMITA S. DHAWAN (CSB No. 326639)
ndhawan@fenwick.com
4 FENWICK & WEST LLP
555 California Street, 12th Floor
5 San Francisco, CA 94104
Telephone: 415.875.2300
6 Facsimile: 415.281.1350

7 Attorneys for Defendant
NAADAM, INC.

8

9 UNITED STATES DISTRICT COURT

10 CENTRAL DISTRICT OF CALIFORNIA

11

12 360SWEATER COMPANY LLC, a | Case No.: 2:21-cv-04866 CAS-SK
California limited liability company,
13 | **NAADAM, INC.'S RESPONSE**
**TO PLAINTIFF'S EX PARTE**
14 Plaintiff, | **APPLICATION FOR ISSUANCE**
**OF TEMPORARY**
15 v. | **RESTRAINING ORDER AND**
**ORDER TO SHOW CAUSE RE:**
16 NAADAM, INC., a Delaware corporation, | **ISSUANCE OF PRELIMINARY**
**INJUNCTION**
17 Defendant.
| Date Action Filed: June 15, 2021
18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

    A.  The Parties ................................................................................................ 3

    B.  Naadam's Use of Google Ads and Dynamic Keyword Insertion ........ 5

    C.  Naadam's Remediation of the Challenged Advertisements ................ 5

ARGUMENT ............................................................................................................. 7

I.  PLAINTIFF IS NOT ENTITLED TO THE EMERGENCY
RELIEF REQUESTED, BECAUSE THE CONDUCT IT
BELATEDLY SEEKS TO ENJOIN HAS CEASED. .................................... 7

    A.  Plaintiff failed to present evidence of a likelihood of
imminent, irreparable harm. ................................................................. 8

        1.  Naadam has unequivocally terminated the accused
conduct. ......................................................................................... 9

        2.  Plaintiff's claimed harms are speculative and
unsupported. ............................................................................... 11

        3.  Plaintiff's nearly six-week delay negates the
irreparable harm required for this emergency application. ...... 13

    B.  Plaintiff is unlikely to succeed on the merits because it
cannot demonstrate customer confusion. ........................................... 14

    C.  The temporary restraining order sought by Plaintiff is not
in the public interest. ........................................................................... 18

II.  IF THE COURT ENTERS A RESTRAINING ORDER
BROADER THAN THE ONE PROPOSED BY NAADAM, IT
SHOULD REQUIRE A BOND. ................................................................... 19

III.  CONCLUSION ............................................................................................... 20

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.C.T. Prods., Inc. v. W.S. Indus., Inc.,*
Civ. No. 16-476, 2017 WL 4708152 (C.D. Cal. July 14, 2017),
*aff'd sub nom. ACT 898 Prods., Inc. v. WS Indus., Inc.*, 774 F.
App'x 1012 (9th Cir. 2019) ................................................................... 3

*ALPO Petfoods, Inc. v. Ralston Purina Co.,*
913 F.2d 958 (D.C. Cir. 1990) . A Proposed Order ............................. 8

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's
Found. of Am., Inc.,*
307 F. Supp. 3d 260 (S.D.N.Y. 2018) ................................................ 17

*AMF, Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979), *abrogated in part on other grounds
as recognized in Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d
792 (9th Cir. 2003) ....................................................................... 16, 18

*Applied Info. Scis. Corp. v. eBay, Inc.,*
511 F.3d 966 (9th Cir. 2007) ............................................................. 14

*Arcsoft, Inc. v. Cyberlink Corp.,*
153 F. Supp. 3d 1057 (N.D. Cal. 2015) ....................................... 12, 14

*Ariz. Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) .............................................................. 8

*Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods
Corp.,*
799 F.2d 6 (1st Cir. 1986) .................................................................... 9

*Caribbean Marine Servs. Co. v. Baldrige,*
844 F.2d 668 (9th Cir. 1988) ............................................................... 8

*Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.,*
Civ. No. 20-10220, 2021 WL 2497928 (C.D. Cal. May 19, 2021) .... 13

*Chance v. Pac Tel Teletrac, Inc.,*
242 F.3d 1151 (9th Cir. 2001) ........................................................... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*City & Cnty. of S.F. v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ................................................................ 3, 19

*Clark Material Handling Co. v. Zoomlion Heavy Indus. Sci. & Tech. Co.,*
  Civ. No. 18-5853, 2018 WL 6252463 (C.D. Cal. Oct. 11, 2018) ...................... 12

*Cohn v. Petsmart, Inc.,*
  231 F.3d 837 (9th Cir. 2002) ...................................................................... 18

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280 (9th Cir. 1992) ...................................................................... 8

*Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.,*
  No. 17-cv-06393-YGR, 2018 WL 659105 (N.D. Cal. Feb. 1, 2018) ........... 11, 12

*Ferring Pharms., Inc. v. Watson Pharms., Inc.,*
  765 F.3d 205 (3d Cir. 2014) ........................................................................ 9

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.,*
  736 F.3d 1239 (9th Cir. 2013) ...................................................................... 8

*In re Circuit Breaker Litig.,*
  860 F. Supp. 1453 (C.D. Cal. 1994), *aff'd sub nom. Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.,* 106 F.3d 894 (9th Cir. 1997) ................................................................ 3, 9

*In re Excel Innovations, Inc.,*
  502 F.3d 1086 (9th Cir. 2007) ...................................................................... 8

*Kiva Health Brands LLC v. Kiva Brands Inc.,*
  402 F. Supp. 3d 877 (N.D. Cal. 2019) ................................................... 2, 11, 12

*Klamath–Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.,*
  109 F. Supp. 3d 1238 (N.D. Cal. 2015) ........................................................ 14

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC,*
  No. SACV 16-01841-CJC(KESx), 2016 WL 9275407 (C.D. Cal. Nov. 17, 2016) ...................................................................................... 11

FENWICK & WEST LLP
ATTORNEYS AT LAW

RESPONSE TO EX PARTE APPLICATION
FOR TRO

iii

CASE NO.: 2:21-cv-04866 CAS-SK

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
    804 F.3d 930 (9th Cir. 2015) ................................................................. 15

*Nabisco, Inc. v. PF Brands, Inc.*,
    191 F.3d 208 (2d Cir. 1999) .................................................................. 18

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ........................................................ 15, 17

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985) ............................................................... 14

*Perfumebay.com, Inc. v. eBay Inc.*,
    506 F.3d 1165 (9th Cir. 2007) ............................................................... 16

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ............................................................... 15

*Reno Air Racing Ass'n., Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) ........................................................... 7, 12

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ................................................................... 8

*Runway Beauty, Inc. v. Runway Mag., Inc.*,
    Case No. 09-8333 PA, 2009 WL 10682033 (C.D. Cal. Nov. 23, 2009) ............. 14

*Schutt Mfg. Co. v. Riddell, Inc.*,
    673 F.2d 202 (7th Cir. 1982) ................................................................. 10

*Stark v. Diageo Chateau & Estate Wines Co.*,
    907 F. Supp. 2d 1042 (N.D. Cal. 2012) .................................................. 18

*Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*,
    No. 17-CV-5807 (SJF)(SIL), 2019 3485700 (E.D.N.Y. July 2, 2019);
    *R&R adopted*, 2019 WL 3927367 (E.D.N.Y.)
    ......................................................................................................... 16

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................... 7

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*THOIP v. Walt Disney Co.*,
  736 F.Supp.2d 689 (S.D.N.Y. 2010) ............................................................... 18

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
  No. C 12-35856 PJH, 2014 WL 4312021
  (N.D. Cal. Aug. 28, 2014) .................................................................. 11, 12, 14

*Williams v. Green Valley RV, Inc.*,
  Civ. No. 15-1010, 2015 WL 4694075 (C.D. Cal. Aug. 6, 2015) ........................ 14

*Winter v. Nat'l Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................ 7

**STATUTES AND RULES**

15 U.S.C. § 1116(a) .............................................................................................. 12

Fed. R. Civ. P. 65 ..................................................................................... 7, 12, 19

Lanham Act ...................................................................................................... 1, 12

## I.     INTRODUCTION

The Court should deny the application for a restraining order because Plaintiff 360Sweater Company LLC ("360Sweater") delayed for weeks in making its request and now seeks to enjoin conduct that has undisputedly ceased.  360Sweater could have confirmed for itself that the advertising it objects to no longer appears on Google had it only performed several Google searches Friday afternoon before filing its request.  360Sweater opted instead to rely on stale evidence and to invoke the emergency powers of the Court over a weekend in the hope of potentially securing a broad and entirely unnecessary injunction against a competitor.

The dispute here concerns an issue with an automatic Google Ads feature— not an attempt to pass off counterfeit goods or confuse consumers.  In pressing an argument that this case is about the latter, Plaintiff has turned the record on its head.  Defendant NAADAM, Inc. ("Naadam") is an American clothing company founded in 2013 and specializing in luxury cashmere products.  After meeting with a Naadam co-founder in 2015, 360Sweater's president copied Naadam's direct-to-consumer business model and its origin story (about an eye-opening trip to Mongolia) to start his own "Naked Cashmere" line.  Naadam has its own strong brand with consumer goodwill attached; it has no desire to be mis-associated with its competitors.

Naadam advertises using Google Ads—a Google program that places advertisements in user search results based on the keyword the user searches. Bidding on a competitor's name as a keyword (such that one's own advertisements appear when a user searches on the competitor) is a lawful and widespread practice, as Plaintiff itself admits (Dkt. 12-1 ("PB") at 2:17-19, 12:6-8); numerous courts have held that doing so does not infringe on the competitor's mark under the Lanham Act. The disputed advertisements here were generated by Google's Dynamic Keyword Insertion, a feature that populates blank fields in ad copy with the keyword from the user's search or another related term.  Ad copy submitted as "Naadam Official Site – [keyword]" may appear as "Naadam Official Site – Cashmere Sweaters," or

"Naadam Official Site – Cashmere for Men," or, as claimed previously occurred here, "Naadam Official Site – Naked Cashmere," depending on the words the user typed into the Google search and other factors.   In short, Naadam lawfully purchased "naked cashmere" as one of many keywords for its search advertising; it submitted dynamic ad copy for some of its ads; and Google's features in some instances combined the two.   There is no evidence that any consumer was confused by the resulting ads, which bore other clear identifiers (*e.g.*, "**Ad**," "www.naadam.co") that they were Naadam's search result advertising and not native search results for the Naked Cashmere brand.   But at any rate, Naadam did not intend to advertise itself as the "official site" for a 360Sweater-owned brand and, after a short period of determining the correct settings to address this issue, has fully and finally resolved it.

360Sweater filed its complaint nearly six weeks ago and has sat on its hands while Naadam worked proactively to resolve the dispute.   Naadam made changes to its Google Ads copy and keywords on June 9 and 23 that eliminated the ads in 360Sweater's demand letter and complaint.   Naadam responded to the demand letter on July 1; requested multiple calls with counsel (conducted July 9 and 14) to try to work out a solution weeks before a response to the complaint was even due; and ultimately, after attempting to consult with Google itself, implemented a work-around that allows Naadam to continue its keyword advertising while ensuring that neither "naked cashmere" nor any variations thereof will get inserted into the text of any of Naadam's advertisements.   There were, admittedly, miscommunications and lingering appearances of the mark as Naadam worked towards that solution.   But the claim that Naadam's conduct was "becoming more brazen" (PB10:1-2) is hardly accurate when the conduct that Plaintiff seeks to enjoin has without question ceased.

As a result, the Court should deny the request.   Plaintiff delayed unreasonably in seeking judicial intervention, *see Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 897 (N.D. Cal. 2019), and improperly seeks to enjoin conduct

FENWICK & WEST LLP
ATTORNEYS AT LAW

that has ceased, *see In re Circuit Breaker Litig.*, 860 F. Supp. 1453, 1456 (C.D. Cal. 1994), *aff'd sub nom. Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894 (9th Cir. 1997); *see also A.C.T. Prods., Inc. v. W.S. Indus., Inc.*, Civ. No. 16-476, 2017 WL 4708152, at *10 (C.D. Cal. July 14, 2017), *aff'd sub nom. ACT 898 Prods., Inc. v. WS Indus., Inc.*, 774 F. App'x 1012 (9th Cir. 2019) (denying injunctive relief where "allegations are in the past tense and Plaintiff has provided no evidence that Defendant continues to infringe its trademark").

Finally, if the Court disagreed that Naadam's voluntary conduct and commitment under oath is sufficient, any order would appropriately address only the cited conduct, not the vastly overbroad terms 360Sweater proposed.  Injunctive relief *must* be "narrowly tailored to remedy the specific harm shown."  *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018) (citation omitted).   360Sweater complains of nothing other than dynamic insertion in the Google Ads.  Here, any order should therefore limit only use of the mark or any confusingly similar combination of the words "naked cashmere" in the headline or text of any Google keyword advertisements in a manner that suggests that Naadam is sponsored, approved, authorized by, or that its goods originate from Plaintiff.  Naadam has submitted a Proposed Order to this effect if any were needed.

## II.   STATEMENT OF FACTS

### A.   The Parties

Naadam is an American clothing company specializing in luxury cashmere products.  Naadam was founded on a direct-to-consumer business model with local sourcing of cashmere.  (Declaration of Lindsey Knowles in Support of Naadam, Inc.'s Response to Plaintiff's Ex Parte Application for Issuance of Temporary Restraining Order ("Knowles Decl."), ¶ 5.)  On a trip to Mongolia, its co-founders realized that they could distribute sustainable cashmere more efficiently than conventional methods with both lower prices to consumers and greater return to the local producers.  (*See* Declaration of Todd R. Gregorian in Support of Naadam, Inc.'s

FENWICK & WEST LLP
ATTORNEYS AT LAW

Response to Plaintiff's Ex Parte Application for Issuance of Temporary Restraining Order ("Gregorian Decl."), ¶ 20.) That origin story was and remains a prominent part of Naadam's identity and marketing. (*See id.*; *see* Knowles Decl., Exs A–C & G).

Naadam is a socially-conscious brand that works not just to benefit itself and the local Mongolian communities that supply it, but also to protect the planet through anti-desertification programs (programs that protect against creation of deserts from arable land), clean energy-powered factories, and tree planting nonprofit work. Naadam's brand has gained widespread recognition for both its products and these ethical and sustainable business operations. (Knowles Decl., ¶¶ 5-6, Exs. A-G.)

360Sweater is a manufacturer and supplier of cashmere products. (PB3:4-6.) Its CEO, Bruce Gifford, reportedly spent more than 20 years sourcing and distributing cashmere as part of the traditional supply chain in that industry. (Gregorian Decl., ¶ 24 & Ex. 13.) After Naadam began gaining recognition for its products and innovations in that supply chain, Mr. Gifford took a meeting with Naadam's co-founder, Matthew Scanlan. (*Id.*, ¶ 21 & Exs. 9-10.) Shortly thereafter, Mr. Gifford started his new Naked Cashmere line, using Naadam's same direct-to-consumer business model. (*Id.*, ¶ 22 & Ex 11.) Mr. Gifford also copied Naadam's origin story, allowing the press to report that he and his wife Leslie had taken a similar trip to Mongolia as Mr. Scanlan and his co-founder Diederik Rijsemus had, and where they gathered the same insights. (*Id.* ¶¶ 23-24 & Exs. 12-13.)

While 360Sweater characterizes Naadam as a "discount" brand, that is simply not accurate. Both companies offer a range of luxury products at a range of prices. (Gregorian Decl., ¶ 14 & Ex. 3.) Moreover, despite its claim to never offer "Naked Cashmere" products at sale prices, 360Sweater in fact has done so regularly through both sales on its own website and by offering them through "off price" retail chains known for deep discounts. (*Id.*, ¶¶ 15-19 & Exs. 4-8; Plaintiff's Exs. K, M, N, O, Q, R, S.) None of this is mentioned to denigrate Mr. Gifford or his business, but rather to explain that Naadam is not the unknown counterfeiter that 360Sweater has

FENWICK & WEST LLP
ATTORNEYS AT LAW

portrayed, but rather has its own well-known luxury brand with a strong reputation, and it has no desire or incentive to confuse itself with a competitor.  (*See* Knowles Decl., ¶ 6.)

### B.    Naadam's Use of Google Ads and Dynamic Keyword Insertion

Naadam advertises using Google Ads— an online advertising platform that allows advertisers to display their ads on Google's search engine results page. (Knowles Decl., ¶¶ 2, 7.)  Businesses select keywords (*i.e.*, search terms) that they want to target and pay to have their advertisements ranked near the top of the search results page when a Google user searches on the keyword.  (*Id.*)  Bidding on a competitor's name as a keyword (such that one's own advertisements appear when a user searches on the competitor), is a widespread and lawful practice, and 360Sweater has pointedly *not* complained about that practice here.  (*Id.*, ¶ 8; PB2:17-19, 12:6-8.)  As part of the Ads program, Google offers a feature called Dynamic Keyword Insertion ("DKI").  Knowles Decl., ¶ 3.)  DKI dynamically updates the text of an advertisement to include keywords that match or otherwise relate to a customer's search terms.  (*Id.*, ¶¶ 3, 11 n.3.)  Advertisers, for their part, submit ad copy that contains spaces for Google to insert that dynamic text.  (*Id.*, ¶ 3.)

### C.    Naadam's Remediation of the Challenged Advertisements

Naadam received notice of the first advertisements that 360Sweater complained of in this case on June 8, 2021, when Naadam received 360Sweater's demand letter.  (Knowles Decl., ¶ 8.)  The letter identified two ads, one in which Google had dynamically inserted "Naked Cashmere" into Naadam's ad copy "Official Site – [***]," and another in which it inserted "nakedcashmere" into ad copy.  (Dkt. 13-7 (Ex. G) at 3.)  Both ads are prominently labeled as such ("**Ad**"), distinguishing them from native search results.  (*Id.*)  And both prominently list the URL for Naadam's website ("www.naadam.co/").  (*Id.*)  Clicking on the Naadam ad headline takes the user to Naadam's website, where 360Sweater's mark does not, and did not ever, appear.  (*See id.*; Dkt. 13-8 (Ex. H) at 2; *see also, e.g.,* Dkt. 13-10 (Ex. J).)

Naadam nonetheless took steps that as of June 23, 2021 fully prevented either ad from appearing.  It discontinued the "Official Site" headline as well as *any* purchase of the "nakedcashmere" (no space) keyword.  (Knowles Decl., ¶¶ 9-10.) And it responded directly to 360Sweater on July 1, explaining that DKI had caused the identified ads and that it had addressed the issue.  (Dkt. 13-8 (Ex. H) at 2-3; Gregorian Decl., ¶ 4.)[1]  360Sweater did not immediately respond.  Instead, over the next two weeks, *Naadam* requested multiple calls with counsel (conducted July 9 and 14) to determine whether and on what terms 360Sweater would dismiss the complaint.  (Gregorian Decl., ¶¶ 5-6.)

It was only during the second of those calls, *three weeks* after Naadam had completed its remedial changes discussed above, that 360Sweater alleged that the "same" ads continued to appear on Google.  (*Id.*, ¶ 6.)  The ads were not the same, as Google had returned them using a different keyword and ad copy.  (*See* Plaintiff's Exs. M-Q.)  The closest was an ad that read "Naadam Official Site – {keyword}" (Ex. Q), which was, in Naadam's view, even more unlikely to cause confusion given that it specified that the "Official Site" was Naadam's own.  That aside, Naadam agreed to follow up, and after consultation with Google, determined a solution that decoupled its purchases of search results for "Naked Cashmere" from any dynamic advertising and, instead, associated it with a separate group of static ads that would not display any inserted text.  (Knowles Decl., ¶¶ 11-15.)  Naadam completed these changes on Friday, July 23 (*see id.* ¶ 13), and they have fully addressed the issues that 360Sweater raised.  (Gregorian Decl., ¶¶ 9-12.)  360Sweater was monitoring

---

[1] The response stated that Naadam had:  "provided instructions to Google to ensure that the term 'naked cashmere' not be used as a keyword for purposes of the DKI feature."  (Dkt. 13-8 at 2.)  This was generally correct, but imprecise.  Naadam discontinued "nakedcashmere" (no space) as a keyword entirely, and its term specified for use with DKI was "Cashmere Sweaters," not "Naked Cashmere" or "nakedcashmere" or any variation thereof.  (Knowles Decl., ¶¶ 9, 11 & n.3.)  But Naadam's designation of "Cashmere Sweaters" as a keyword for DKI could still pull in other related keywords on which it had bid, including "Naked Cashmere."  (*Id.*, ¶ 11.)

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  Naadam's advertising during the week of July 19 and could have confirmed this for
2  itself had it performed Google searches before filing its request.  (*See id.*)  Instead,
3  360Sweater did not reach out to Naadam at all before giving notice that it would seek
4  an emergency order, and persisted even after counsel pointed out that Naadam's
5  changes had eliminated the challenged advertisements.  (*Id.*, ¶¶ 7, 11 & Ex. 2.)

## ARGUMENT

## I.   PLAINTIFF IS NOT ENTITLED TO THE EMERGENCY RELIEF REQUESTED, BECAUSE THE CONDUCT IT BELATEDLY SEEKS TO ENJOIN HAS CEASED.

A temporary restraining order ("TRO") is an extraordinary and drastic remedy that the Court may only award in "extremely limited" circumstances upon a clear showing that the moving party is entitled to relief.  *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  A plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (TRO standard "substantially identical" to that for issuing a preliminary injunction).

Plaintiff is not entitled to the sweeping emergency injunctive relief it seeks, most fundamentally because there is nothing to enjoin—the mark in question is no longer displayed in Google search results that show Naadam's sponsored advertisements.  In the nearly six weeks since Plaintiff first identified the disputed ads, Naadam took documented steps to address Plaintiff's concerns *before* Plaintiff filed this application.  For the reasons set forth below, Plaintiff cannot make the "clear[] show[ing]" that a TRO requires, *see* Fed. R. Civ. P. 65(b), and the Court should deny the application.

FENWICK & WEST LLP
ATTORNEYS AT LAW

In the alternative, Defendant proposes that the Court enter an order narrowly tailored to the precise alleged infringement claimed by Plaintiff—*i.e.*, the display of the trademark in the copy of Naadam's Google Ads.  That relief, which is consistent with Naadam's good faith efforts, should be "tailored to eliminate only the specific harm alleged, [as a]n overbroad injunction is an abuse of discretion."  *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992) (reversing trademark injunction in part as overbroad); *see also ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1990) ("The law requires that courts closely tailor injunctions to the harm that they address.").  A Proposed Order reflecting this alternative accompanies this filing.

> **A.  Plaintiff failed to present evidence of a likelihood of imminent, irreparable harm.**

Irreparable harm is "harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014); *see also Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."). Irreparable harm must be "immediate" to warrant preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). A finding of irreparable harm must also be grounded in actual, concrete evidence. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). "Speculative injury" is not a basis for a finding of irreparable harm. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

As explained below, Plaintiff provides no concrete evidence of immediate, irreparable harm, both because its mark no longer appears in Naadam's Google Ads, and because its allegations of brand tarnishment are speculative and unsupported.

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 1. Naadam has unequivocally terminated the accused conduct.

Plaintiff seeks injunctive relief to address an alleged harm that, while speculative to begin with, has indisputably ceased. On receiving notice from Plaintiff of the two original disputed ads, Naadam promptly took concrete and effective steps to address the concerns Plaintiff had raised. Plaintiff did not raise any further issue until more than *three weeks later*. Then, following a call that Naadam itself initiated to proactively resolve this matter, Plaintiff identified a new set of ads (ones that prominently identified the corresponding link as "Naadam – Official Site" before Google's insertion of the "naked cashmere" keyword) would cause confusion. By the end of the following week, Naadam had made further changes to its Google Ads settings to ensure unequivocally that the mark would not display anywhere in the text of its Google advertising. With these adjustments, which it has committed to keep in place, Naadam is confident that it has resolved the issue. There is nothing to restrain or enjoin Naadam from doing now that would address Plaintiff's claim.

If a defendant's challenged conduct is at an end and will not be continued or resumed, a court should deny a request for injunction as unnecessary or moot. *See In re Circuit Breaker Litig.*, 860 F. Supp. at 1456 (denying injunction because the defendant had infringed innocently, had already ceased the challenged conduct and then assured the court that it had no intention of resuming it); *see also Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 218 (3d Cir. 2014) (no irreparable injury to support preliminary injunction because defendant "certified to the court" that he would not repeat the false statements in the future); *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 13 (1st Cir. 1986) (denying preliminary injunction against retailer-defendant who in good faith sold mislabeled coats and promptly took the coats off sale, finding "no hint of any proclivity or interest on the part of [defendant] to sell those coats").

The sworn statements supporting Naadam's opposition make clear that it has proactively terminated any alleged harm and that it will not reoccur pending the final

FENWICK & WEST LLP
ATTORNEYS AT LAW

resolution of this case.  From the outset, Naadam had no intention to display Plaintiff's mark in its Google advertising in a manner that would even potentially cause confusion about the source of its products or any association with a competitor's brand. (Knowles Decl., ¶ 6).  It had no reason to:  "Naadam" is already the market leader in direct-to-consumer cashmere knitwear, with a strong, well-recognized brand. (*Id*.)  That is why Naadam took swift action upon receiving notice of the disputed ads to ensure that Google would no longer generate them.  Naadam learned three weeks later that that the problem had resurfaced because 360Sweater regarded different ads (those that recite "Naadam Official Site – [keyword]" rather than "Official Site – [keyword]") as similarly confusing.  It took unequivocal and expansive steps—after consulting with Google—to ensure that Plaintiff's mark would simply no longer appear in Naadam's Google Ads in any form.  Those final adjustments went into effect on July 23, 2021, *before* Plaintiff filed this application, and on the same day Plaintiff's counsel denied the undersigned's request to discuss these changes.  *See Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206-07 (7th Cir. 1982) (affirming denial of injunction where defendant had discontinued the accused conduct prior to the commencement of the case).

These actions attest to Naadam's good faith. They confirm that Naadam has absolutely no interest in re-engaging in the disputed conduct.  The disputed ads were algorithmically-automated displays triggered by a series of settings in Naadam's Google Ads account, not a deliberate effort to engraft Plaintiff's mark onto Naadam's strong brand.  Out of a desire to avoid further dispute, Naadam adjusted its Google Ads settings.  In an abundance of caution, it went so far as to restrict voluntarily some conduct that even Plaintiff agrees is not an actionable use of the mark.  Plaintiff offers absolutely no evidence, beyond its own self-serving conjecture, that the disputed ads were intentional.  Nor is there any evidence that Naadam is a serial infringer or otherwise untrustworthy—in fact, the evidence is to the contrary: Naadam seeks to act ethically in all aspects of its business. (*E.g.,* Knowles Decl., Ex. C at 25-26.)

FENWICK & WEST LLP
ATTORNEYS AT LAW

In these circumstances, Plaintiff faces no harm, the claim is now moot, and, respectfully, the Court should deny the application on this basis.

### 2. Plaintiff's claimed harms are speculative and unsupported.

Plaintiff's claim of irreparable harm—characterized vaguely as a loss of control over its "reputation and identity," (PB18:9-10)—is *ipse dixit*, consisting of nothing but speculative assertions and conclusory statements that fail to satisfy Plaintiff's burden of proof for obtaining emergency, *ex parte* relief.

**First**, Plaintiff identifies Naadam's "*continued* unfettered use of Plaintiff's" marks as the source of its harm.  (PB8:13 (emphasis added).)  But, as explained, Naadam is not using Plaintiff's mark or any similar term in the text of its Google advertising and will not do so in the future.  After delaying for six weeks, Plaintiff simply raced to the Court on a few hours' notice and without confirming whether the challenged conduct had in fact stopped.  The defining characteristic of Plaintiff's claimed harm—that it is ongoing—is incorrect.

**Second**, Plaintiff's discussion of harm does not contain a single citation to the record.  Instead, it consists of boilerplate argument that "[l]oss of control over business reputation and damage to goodwill are cognizable irreparable harms in the trademark infringement context."  (PB17:11-13.)  Although loss of goodwill and the ability to control one's reputation *may* amount to irreparable harm, "plaintiff must point to *actual evidence* on these points."  *Kiva Health Brands*, 402 F. Supp. 3d at 896 (internal citations omitted) (emphasis added).  Courts in this Circuit have held that such evidence must consist of "more than . . . a declaration insisting that its reputation and goodwill have been harmed." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, No. C 12-35856 PJH, 2014 WL 4312021, at *10 (N.D. Cal. Aug. 28, 2014); *see also Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-cv-06393-YGR, 2018 WL 659105, at *11 (N.D. Cal. Feb. 1, 2018) (plaintiff's declaration insufficient to prove irreparable harm due to loss of control over reputation); *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, No. SACV 16-

01841-CJC(KESx), 2016 WL 9275407, at *7 (C.D. Cal. Nov. 17, 2016) (declaration that plaintiff will "lose goodwill" because it is a "small business and Defendant [is a] large chain, . . . purely speculative [and] insufficient to demonstrate irreparable harm").

Here, Plaintiff's declarations fail altogether to describe the alleged harm to its reputation and goodwill.  Instead, Plaintiff submits the conclusory declaration of its CEO, which describes Plaintiff's efforts to develop and manage its brand (Dkt. 13-1 ("Gifford Decl.") at ¶¶ 6-8) but does not address at all how the disputed ads affected those efforts.  Plaintiff provides absolutely *no evidence* that any diversion of customers or other confusion has or was likely to have occurred at all, much less that it was caused by the disputed ads.  *See Clark Material Handling Co. v. Zoomlion Heavy Indus. Sci. & Tech. Co.*, Civ. No. 18-5853, 2018 WL 6252463, at *1–2 (C.D. Cal. Oct. 11, 2018) ("A plaintiff must present case-specific evidence of irreparable harm, rather than relying on generic factors that are present whenever a trademark is infringed."); *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1074 (N.D. Cal. 2015) (finding no irreparable harm where basis for claimed diversion "remains utterly speculative"); *see also Reno Air*, 452 F.3d at 1132 (finding reliance on "conclusory statement" insufficient to meet the dictates of Rule 65, because it "would essentially gut Rule 65's notice requirements").  Plaintiff thus offers even less evidence of irreparable harm—zero, in fact—than the declaration testimony that the courts in *Kiva Health*, *Equinox*, and *Wells Fargo* found insufficient.[2]

---

[2] In 2020 Congress amended the Lanham Act to include a "rebuttable presumption of irreparable harm" that is triggered by a "finding of likelihood of success on the merits" for a Lanham Act violation "in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a).  That presumption is unwarranted here because Plaintiff is unlikely to succeed on the merits, for the reasons addressed below, *see infra* Part I.B, and the analysis in the text above, Part I.A.2, proceeds on that basis.  But even if Plaintiff could demonstrate a likelihood of success, then the complete lack of ongoing harm, Plaintiff's failure to offer evidence to substantiate harm, and the lack of urgency inherent in Plaintiff's delay, all would

FENWICK & WEST LLP
ATTORNEYS AT LAW

***Third***, Plaintiff's central argument for brand tarnishment does not withstand scrutiny.  (PB18:5-8.)  Plaintiff argues that the inclusion of its mark with Naadam ad copy indicating discounted or sale pricing clashes with its "reputation as a premium brand," which is predicated on its purported practice of "only sell[ing] its products at full retail pricing," not "at discounted prices."  PB4:3-6 (citing Gifford Decl., ¶ 8).  But Plaintiff's own exhibits plainly indicate that it offered 10% discounts on first-time orders in its own Google Ad copy in June and July 2021.  (*See* Exs. K, M, N, O, Q, R, S.)[3]  Plaintiff has also previously placed its Naked Cashmere products on sale on its own website and advertised that sale on its Facebook page, and has routinely offered Naked Cashmere products at steep discounts through off-price outlets like Nordstrom Rack and Saks Off 5th.  (*See* Gregorian Decl., ¶¶ 17-19 & Exs. 5-8.)  Moreover, both Naadam and Plaintiff are regarded by the market as providing luxury cashmere products, and both offer different knitwear options at a range of prices.  (*Id.* ¶ 14 & Ex. 3.)  Plaintiff's own reliance on discounting and discount channels to sell its products undermines its primary theory concerning the alleged tarnishment of its brand.

### 3.   Plaintiff's nearly six-week delay negates the irreparable harm required for this emergency application.

Plaintiff's delay also counsels against granting a TRO. Plaintiff avers that it was aware of the first two disputed ads on June 7, 2021.  Plaintiff then waited nearly six weeks to move for a TRO on a Friday afternoon, despite claiming that the disputed ads—which, in Plaintiff's telling, became "more egregious," (PB9:11), and "more brazen," (PB10:2)—posed an imminent threat to its brand.  If there truly were such

---

rebut the presumption.  *See, e.g.*, *Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*, Civ. No. 20-10220, 2021 WL 2497928, at *7 (C.D. Cal. May 19, 2021) (finding presumption rebutted by Plaintiff's delay in seeking injunction).

[3] In each Exhibit, a Naadam Google Ad is below Plaintiff's Google Ad. In Exhibits L and M, although Plaintiff's copy references a discount, Naadam's copy makes no mention of sale pricing.

FENWICK & WEST LLP
ATTORNEYS AT LAW

a dire need, Plaintiff would have sought to enjoin Naadam in June, not deep into July with stale evidence of disputed ads that Naadam was no longer running.  Given this lack of urgency, Plaintiff cannot meet its "exceedingly high burden when seeking such relief on an *ex parte* basis," *Runway Beauty, Inc. v. Runway Mag., Inc.*, Case No. 09-8333 PA (JEMX), 2009 WL 10682033, at *2 (C.D. Cal. Nov. 23, 2009), and its delay further undercuts Plaintiff's claims of irreparable harm, *see Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

\* \* \*

Plaintiff's failure to establish a likelihood of irreparable harm alone warrants denial of its motion. *Arcsoft,* 153 F. Supp. 3d at 1070-71 (citing *Williams v. Green Valley RV, Inc.*, Civ. No. 15-1010, 2015 WL 4694075, at *2 (C.D. Cal. Aug. 6, 2015) (denying motion for preliminary injunction based only on movant's failure to establish a likelihood of irreparable harm)); *Wells Fargo*, 2014 WL 4312021, at *10; *Klamath–Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1247-49 (N.D. Cal. 2015).

## B.   Plaintiff is unlikely to succeed on the merits because it cannot demonstrate customer confusion.

To prove trademark infringement, Plaintiff must show priority of use of a valid, protectable trademark, and that Defendant's use of the mark is likely to cause confusion. *See, e.g., Chance v. Pac Tel Teletrac, Inc.,* 242 F.3d 1151, 1156 (9th Cir. 2001) (priority); *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (validity and likelihood of confusion).  For the foregoing reasons, Plaintiff will be unlikely to show that the disputed ads were likely to cause confusion.[4]

Plaintiff seems to advance both source confusion and initial interest confusion as theories of liability, although it hardly addresses the former as a standalone

---

[4] Defendant reserves its rights to challenge priority of use and validity of Plaintiff's mark, as well as to interpose affirmative defenses, as appropriate, under a normal briefing schedule.

14

FENWICK & WEST LLP
ATTORNEYS AT LAW

proposition.  Instead, it blithely assumes that Naadam intended to confuse customers, despite a record that clearly reflects just the opposite, and then downplays the need for "evidence of actual confusion," claiming that the Court instead should "presume" that Naadam "accomplish[ed its] purpose." PB15:22, 23-26 (quotation omitted). But Plaintiff's logic falls apart in the absence of any such purpose by Naadam.  (Knowles Decl., ¶ 6).   And without that presumption, there is absolutely no support in Plaintiff's brief or in its supporting declarations that the disputed ads caused source confusion, *i.e.*, that the ads somehow actually caused consumers thinking they were buying from Plaintiff to mistakenly buy Naadam products instead.  *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011).  That is simply implausible, given the number of webpages a purchaser would need to traverse to actually complete a purchase, each of which prominently displayed marks associated with Naadam's brand, not Plaintiff's, and the care that a cashmere shopper would take prior to authorizing payment and placing an order.

That leaves initial interest confusion, to which Plaintiff devotes two paragraphs.  PB16:18-17:7.  "Initial interest confusion is customer confusion that creates initial interest in a competitor's product. Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement." *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004).  The question is "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the goods." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936-37 (9th Cir. 2015).

Plaintiff's initial interest confusion theory is again predicated on the baseless assumption that Naadam sought to "trade off of Plaintiff's goodwill and reputation." PB17:5-6.  Again, it did not, and Plaintiff offers absolutely no sourced evidence or claim that any shoppers, having searched for "Naked Cashmere," were confused by the Google Ads they encountered.

FENWICK & WEST LLP
ATTORNEYS AT LAW

In sum, whether alleged as source or initial interest confusion, Plaintiff's claims of liability are unsupported by any factual allegation, depend on a faulty assumption that the dynamic insertion of the keyword was deliberate, and are belied by the reality of consumer habits and discernment. The following analysis of the *Sleekcraft* factors confirms that neither formulation is likely to succeed on the merits. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

   a)   **Dissimilarity of the marks in context:** In evaluating similarity of marks, "a court does not consider the similarity of the marks in the abstract, but rather in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase." *Perfumebay.com, Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) (quotation omitted). Here, the mark appeared in Naadam's ad copy: (i) in standard web font, not in the stylized format displayed on Plaintiff's website; (ii) in extremely close proximity to the Naadam name and/or URL; (iii) separate from and just below Plaintiff's Google Ads, which displayed the mark in ALL-CAPS and appended with the ®-symbol; and (iv) after Naadam's first adjustments, with a space between "Naked" and "Cashmere." There is no reason to believe that a customer who had searched for the keyword term and was amenable to clicking on sponsored ads would mistake one distinctively advertised sponsored link for the other. *See Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*, No. 17-CV-5807 (SJF)(SIL), 2019   3485700, at *11 (E.D.N.Y. July 2, 2019) (granting summary dismissal because of no likelihood of confusion for "keyword insertion" of plaintiff's mark into defendant's online advertisement, because "the advertisement's distinguishing characteristics minimize any likelihood of confusion"), *R&R adopted*, 2019 WL 3927367 (E.D.N.Y. 2019).

   b)   **Relatedness of goods is negligible:** Although the parties compete against each other in the niche direct-to-customer cashmere market segment, they do

FENWICK & WEST LLP
ATTORNEYS AT LAW

so from separate websites that each plainly alert the consumer to a particular brand. To the extent the similarity of the parties' offerings confuses users notwithstanding their distinctive branding, it is a consequence of Plaintiff's deliberate replication of Naadam's business model and origin story.

c)   **Use of similar marketing channels is immaterial:**   That both parties market using Google Ads is immaterial.   "Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation*, 638 F.3d at 1151. In addition, Google's use of "Ad" labels next to its sponsored links "heightens consumers care and attention in clicking on the links, and further diminishes the likelihood of confusion." *See Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 299 (S.D.N.Y. 2018).

d)   **Weakness of mark**:   The mark is comprised of two dictionary words, rather than a distinctive logo or design: "cashmere," the word for the product sold by both parties; and "naked," which a consumer might reasonably associate with pure, sustainable cashmere clothing.   The mark is not so strong as to assume confusion as to source.

e)   **Cashmere purchasers are discerning:**   Ten years ago, the Ninth Circuit noted in *Network Automation,* 638 F.3d at 1152, that "the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace." That is even more true now.   The customers at issue here necessarily typed in the words "naked cashmere" or "nakedcashmere" or a close variation into Google search, which caused the insertion of the mark in Naadam's dynamic Google Ads.   It is unreasonable to expect discerning consumers, seeking out a specific purveyor of a luxury good, to be confused into clicking on the sponsored Google Ad of Plaintiff's competitor just below Plaintiff's own Google Ad.

f)    **No intent to cause confusion:** In analyzing defendant's intent, "the only relevant intent is intent to confuse." *THOIP v. Walt Disney Co.*, 736 F.Supp.2d 689, 713 (S.D.N.Y. 2010). Plaintiff does not—and cannot—offer evidence of that here. To the contrary, the sworn declaration of Naadam's chief marketing executive makes clear that Naadam "stands behind its own strong brand image and has no desire to create any consumer confusion about the source of its products or any association with a competitor's brand." (Knowles Decl., ¶ 6). As noted above, Plaintiff's suggestion that an inference should be drawn to the contrary is baseless and unsupported.

g)    **No evidence of actual confusion:** Plaintiff offers no evidence of actual confusion suffered by online consumers during the six weeks that the disputed ads were displayed. Here, the "lack of evidence about actual confusion after an ample opportunity for confusion 'can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion.'" *Cohn v. Petsmart, Inc.*, 231 F.3d 837, 843 (9th Cir. 2002) (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999).

In sum, a review of the *Sleekcraft* factors demonstrates that, if pressed and with all factors considered, Plaintiff will be unlikely to prevail on the merits under the applicable legal standards.

**C.**    **The temporary restraining order sought by Plaintiff is not in the public interest.**

"Preventing consumer confusion serves the public interest." *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1067 (N.D. Cal. 2012). But Plaintiff cites no evidence of consumer confusion, and, now that the accused conduct is terminated, there is no such risk. Instead, it relies on stale evidence to press a belated claim for emergency relief that it does not need. Surely, it is not in the public interest for scarce court resources to be devoted to addressing obviously moot claims

Fenwick & West LLP
Attorneys at Law

for injunctive relief. If the Court enters a restraining order, it should adopt Naadam's proposal.

Should the Court conclude that a TRO is warranted, Naadam respectfully requests that it be "narrowly tailored to remedy the specific harm shown." *City & Cnty. of S.F. v. Trump*, 897 F.3d at 1244. Although Naadam has attempted to conform its advertising to address all 360Sweater's objections, Naadam does not thereby concede that its advertising is unlawful—just that these problems with Google Ads should be resolved consensually when possible. The overbroad proposed TRO submitted by Plaintiff could require additional revisions to Naadam's advertising campaigns—including its non-DKI online advertising—which could result in significant loss of revenues over a multi-month period during which any Court order to that effect is in place. The alternative TRO submitted by Naadam avoids this overbreadth problem through wording narrowly tailored to the precise alleged infringement claimed by Plaintiff—*i.e.*, the display of the mark in the copy of Naadam's Google Ads.

## II.   IF THE COURT ENTERS A RESTRAINING ORDER BROADER THAN THE ONE PROPOSED BY NAADAM, IT SHOULD REQUIRE A BOND.

Under Rule 65(c), the Court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Here, if the Court enters the narrowly-scoped form of order that Defendant submitted—which, in effect, orders Defendant to do what it voluntarily did—Defendant agrees to waive the bond. If the Court is inclined to order broader injunctive relief, it should require a bond in an amount consistent with the cost to Naadam of revisions to its advertising campaign. (*See* Knowles Decl, ¶ 17 (explaining that loss of revenues could exceed $50,000 over a multi-month period).)

FENWICK & WEST LLP
ATTORNEYS AT LAW

**III.   CONCLUSION**

The Court should deny the application because the Plaintiff unreasonably delayed six weeks before seeking an emergency order and there is no evidence that any of the challenged conduct is ongoing or will resume.  Alternatively, the Court should enter an order in the form proposed by the Defendant.

Dated:  July 26, 2021                              FENWICK & WEST LLP


By: */s/ Todd R. Gregorian*
         Todd R. Gregorian
         Attorneys for Defendant
         NAADAM, INC.